UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 11 Cr. 264 PAC

THEODORE SHULMAN, a/k/a
OperationCounterstrike,
a/k/a Doctor Defense, a/k/a DD,

Defendant.

------------------------------x

October 3, 2012
4:00 p.m.

Before:

HON. PAUL A. CROTTY,

District Judge

APPEARANCES

PREET BHARARA,
United States Attorney for the
Southern District of New York
KAN MIN NAWADAY,
Assistant United States Attorney

WILLIAM JOSEPH STAMPUR,
JOSHUA LEWIS DRATEL,
Attorney for defendants

Also Present:
ANDREW PACHTMAN,
Special Agent FBI

(In open court)

(Case called)

THE COURT: Mr. Schulman, how are you today?

THE DEFENDANT: Fine, thank you.

THE COURT: Mr. Stampur, have you seen the presentence report, dated September 5, 2012?

MR. STAMPUR: Yes, your Honor.

THE COURT: Do you have any corrections you want to make?

MR. STAMPUR: No, your Honor.

THE COURT: The facts are accurate?

MR. STAMPUR: Yes, sir.

THE COURT: I will accept the facts as accurate.

Do you see the guidelines calculation at Page 16 of the offense level set at 22, and the criminal history category is I, resulting in a guideline provisions of 41 to 51 months?

MR. STAMPUR: Yes, your Honor.

THE COURT: Is that accurate as well?

MR. STAMPUR: Yes, it is.

THE COURT: I will accept the calculation of the guidelines as accurate and the facts as stated in the presentence report. All right, Mr. Stampur?

MR. STAMPUR: Thank you, Judge. I am assuming the court has received our submissions?

THE COURT: I did receive the submission and I read

it, the one with all its attachments.

MR. STAMPUR: Thank you. Based on that representation, Judge, I will be brief in my presentation. As your Honor asked, we have seen both the initial presentence report and the addendum to the presentence report, wherein the recommended sentence is 41 months for Mr. Schulman.

Now, I just want the court to understand that this plea agreement was arrived after careful analysis, lengthy negotiations with the Assistant, Mr. Nawaday, myself and Mr. Dratel, and then subsequent to that, as the court is well aware, the Probation Department did a lengthy analysis of the case, and it resulted in that report and their recommendation of 41 months, which I ask the court to accept.

It would be almost impossible for me to in any way, shape or form to verbally express myself in the context that those who have submitted letters on Mr. Schulman's behalf and who are present, many of whom are present in court, as your Honor can see. I think they speak more eloquently and more clearly than I could ever, ever express on his behalf.

I think what it expresses more than anything is not only their love and their affection and their support for Mr. Schulman, but most of those letters, not all of them, expressed the nonviolent nature that he possesses and has possessed his entire life. That I think is the overriding theme that is contained in every submission that the court has

in its possession.

Now, finally I think the most important thing is Mr. Schulman's own recognition of the wrongs that he has done. In the letter that he himself submitted to the court we included in our package, I think it is clear that he recognizes what he did was wrong, that he is remorseful for it and understands he will be punished as a result of that. I think he would like to speak very briefly when I am finished to address that also.

I would just respectfully ask the court, I know the court has read all of the submissions, to consider being as lenient as possible knowing what you know now of Mr. Schulman with the submission and the Probation Department's reports.

Thank you, your Honor.

THE COURT: Thank you. Before I hear from Mr. Schulman, Mr. Nawaday, do you want to add anything to your letter of October 1st?

MR. NAWADAY: No, your Honor. I will just briefly -- well, just briefly the government's position is that a guideline sentence is appropriate in this case as set forth in our letter and that guideline sentence is necessary to capture the seriousness of the offense and adequately deter this defendant from future criminal conduct as well as provide for general deterrence.

THE COURT: Mr. Schulman, this is your opportunity to speak, sir.

THE DEFENDANT: I just want to say I'm sorry I frightened these people with my writing and I recognize that what I did was wrong.

THE COURT: Now let me ask you, Mr. Schulman, you agree that you've learned that you can't take the law into your own hands?

THE DEFENDANT: Yes.

THE COURT: And there are wrongs that are committed in the world, there are people that you can bring those wrongs to their attention and ask them to prosecute?

THE DEFENDANT: Yes.

THE COURT: It is not for you to do that.

THE DEFENDANT: Yes.

THE COURT: Do you promise not to do it again?

THE DEFENDANT: Yes.

THE COURT: All right. Anything else you want to say, Mr. Schulman?

THE DEFENDANT: No, thank you.

THE COURT: Mr. Stampur?

MR. STAMPUR: I think not.

THE COURT: Mr. Dratel?

MR. DRATEL: No, your Honor.

THE COURT: I have the presentence report of September 5. I have mr. Nawaday's letter of October 1st. I have the submission submitted by Mr. Duffy of Mr. Dratel's office, but

it contains the letter of --

MR. DRATEL: Both Mr. Stampur and myself.

THE COURT: I am trying to get to the signature page.

From Mr. Stampur and Mr. Dratel, a copy with Mr. Nawaday. Attached to that is Mr. Schulman's letter, letters from members of the family, including his mother and his sister and other close friends and family members.

I would say this, that Mr. Schulman is a fortunate man to have such a loving and caring family, which of course there will be this separation. This is a very serious matter, and in my colloquy with Mr. Schulman, he recognizes we can't have individual citizens taking the law into their own hands.

It would be very, very dangerous for every member of society if each of us was self-empowered to enforce the laws. There is plenty of opportunity for people who have strong feelings about things that are wrong in society to petition for hearing of their grievances and not to be taken into hand by threatening people, which clearly this is very, very dangerous to our society. It strikes at the very core of our democracy.

If we can't get along with one another, we have to survive based on threats. That makes us less free and less independent and less able to enjoy the bounties America delivers for us. I have considered the presentence report. Mr. Stampur and Mr. Dratel, I will tell you what the sentence is I will impose. I will give you an opportunity to object

before I impose it. I am going to impose a custodial sentence which is following the recommendation of the presentence report. It is also what I calculated the guideline provisions as calculated for when Mr. Schulman pled guilty, and sentence him to 41 months, with a term of supervised release of three years. There will be no fine. There will be no restitution. I don't think there is anything to forfeit?

MR. NAWADAY: No, your Honor.

THE COURT: There will be a special assessment of $100.00. This is subject to the mandatory conditions, except I will suspend the drug treatment and testing condition. The standard conditions will apply along with several special conditions.

The special conditions are that Mr. Schulman is to participate in a program approved by the Probation Office, which may include testing to determine whether the defendant has reverted to using drugs or alcohol. The court authorizes the release of available drug treatment evaluations, reports to substance abuse treatment providers as approved by the Probation Office. The defendant will be required to contribute to the cost of services rendered in the form of co-payment in an amount determined by the Probation Office based on his ability to pay or availability of third-party payments.

Mr. Schulman is to continue to receive psychiatric or psychological care as is necessary in the circumstances. He is

to submit his person, residence, place of business, vehicle or any other premises under his control to a search, on the basis that the Probation Office has reasonable belief that contraband or evidence of violations of the conditions of release may be found. The search is to be conducted at reasonable times and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents the premises may be subject to search pursuant to this condition.

Finally, as to release, Mr. Shulman is to report to the nearest Probation Office within 72 hours of release. If the defendant is sentenced to any period of supervision, as he is, he is to be supervised by the district of residence.

Mr. Stampur, you had additional requests you wanted to make?

MR. STAMPUR: Yes, your Honor, we had.

THE COURT: First of all, do you have any objections other than what you already voiced?

MR. STAMPUR: No, sir.

THE COURT: Do you have additional recommendations?

MR. STAMPUR: We were hoping that the court would designate Mr. Schulman to not only the northeast corridor, but if you could designate him to Otisville Camp or possibly Allenwood, and that would allow him to remain close with his family.

THE COURT: Otisville Camp or Allentown?

MR. STAMPUR: Allenwood.

THE COURT: I will make that recommendation. As you know better than I do, the Bureau of Prisons will make its own determination. I will make that recommendation.

MR. STAMPUR: Thank you.

THE COURT: Did you have a request for drug treatment?

MR. DRATEL: Your Honor, we did in our papers.

THE COURT: Yes.

MR. DRATEL: The sentence and the time that Mr. Schulman has already served I think are going to interfere with his ability to complete the program and get the benefit from it. It is probably more important at this stage for Mr. Schulman, from our perspective, for the recommendation for the designation because of the RDAP is available in some places, not available in others. We'll withdraw that because I don't think he'll be able to complete the program based on the waiting lists and where it is available and the amount of time he has left to serve.

THE COURT: So the request for RDAP treatment is withdrawn?

MR. DRATEL: Yes.

THE COURT: I will recommend Otisville first, and in the alternative Allenwood, as you request.

MR. STAMPUR: I hate to belabor the point, but if by

some set of circumstances he goes to a location where that program is available, I am sure I can come back to the court AND maybe just renew the application if that will be a possibility?

THE COURT: I can also make a recommendation if at all possible he be assigned to the facility, either one, so long as if it is appropriate in the judgment of the Bureau of Prisons to get RDAP. I don't mind making that as an alternative recommendation. Do you have any suggestions, Mr. Nawaday?

MR. NAWADAY: I do not.

MR. STAMPUR: That would be more than acceptable, Judge. Thank you.

THE COURT: That is what I will do.

MR. STAMPUR: Thank you.

THE COURT: Now that I've imposed impose sentencing, Mr. Shulman, I have to advise you you have the right to appeal the sentence I have just imposed. If you're unable to pay the filing cost, you have the right to appeal in forma pauperis. If you so desire, the Clerk will immediately prepare and file a notice of appeal on your behalf. The notice of appeal has to be filed within 14 days from the entry of judgment. Judgment will be entered by noon tomorrow.

Are there any open counts?

MR. NAWADAY: Yes, the government moves to dismiss the open counts in the indictment.

THE COURT: The open counts, all open counts are dismissed. Mr. Stampur, is there anything else?

MR. STAMPUR: Nothing else. Thank you.

THE COURT: All right. Thank you.

(Court adjourned)